***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant.
3. Defendant is a qualified self-insured, and ESIS is the adjusting agent.
4. Plaintiff's average weekly wage is as set forth on the Form 22 Wage Chart which defendant agreed to submit to the Industrial Commission after the hearing before the Deputy Commissioner.
 ***********
Based upon all of the evidence included in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 9 January 1996, plaintiff slipped and fell on ice on the employer's property which resulted in pain to his lower back and right knee. Defendant acknowledged the fact of plaintiff's fall, and provided medical treatment of his injuries pursuant to the Act. Defendant did not file a Form 21 Agreement for Compensation for Disability or a Form 60 Employer's Admission of Employee's Right to Compensation.
2. Plaintiff was treated initially by company physician Dr. Dowe Albright on 30 January 1996, who prescribed pain medication and recommended stretching exercises.
3. Plaintiff was subsequently referred by Dr. Albright to orthopedic surgeon Dr. Leon Dickerson at Charlotte Orthopedic Specialists, who initially examined plaintiff on 27 February 1996. Upon examination, Dr. Dickerson noted that plaintiff had tenderness in his low back and right sacroiliac joint area. Plaintiff also had decreased sensation in the lateral border of the right foot, which Dr. Dickerson opined was indicative of nerve irritation. Dr. Dickerson also examined plaintiff's knee, but testified that the knee problem had completely resolved and was no longer an issue in plaintiff's treatment. Dr. Dickerson continued the Naprosyn which had been prescribed by Dr. Albright. Dr. Dickerson's impression following the initial examination was that plaintiff had a mild disc herniation.
4. Plaintiff returned to Dr. Dickerson on 29 March 1996, and showed little improvement. On 10 May 1996, plaintiff presented to Dr. Dickerson with some continuing numbness which Dr. Dickerson believed did not warrant concern. Dr. Dickerson believed at this examination that plaintiff had possible mild sciatica or S1 neuropathy. Dr. Dickerson next saw plaintiff on 25 July 1996, at which time plaintiff's back pain had improved, with some occasional hip soreness. Plaintiff's strength and reflexes had returned to normal.
5. Dr. Dickerson next saw plaintiff on 1 October 1996. Although plaintiff still had some low back pain, treatment at this time was primarily for problems plaintiff was having with his left knee, a condition unrelated to his slip and fall injury. Defendant contends that at this time, plaintiff's injuries resulting from the 9 January 1996 slip and fall had completely resolved and plaintiff was no longer eligible for benefits pursuant to the Act.
6. Plaintiff next presented to Dr. Dickerson on 25 March 1997, complaining of increased pain over a period of several weeks. Dr. Dickerson noted that plaintiff's low back, hip and right leg pain had gotten considerably worse and that he now had a positive straight leg raising test, which was indicative of nerve irritation. Dr. Dickerson ordered a CT Scan or an MRI which was not performed because defendant would not authorize either test. Plaintiff returned to Dr. Dickerson on 20 May 1997, at which time plaintiff again had a positive straight leg raising test and normal ankle reflexes on the left side, but he demonstrated no ankle reflexes on the right side. Based on plaintiff's responses to the reflex tests, Dr. Dickerson opined that plaintiff had a probable herniated disc at L5, S1 on the right side, that the condition had been present for over a year, and that the condition was causally related to plaintiff's injury. Dr. Dickerson recommended that plaintiff undergo an MRI or a CT scan, followed by a nerve root block based on the results of the scan.
7. On 3 June 1997, plaintiff reported to Dr. Dickerson that he was having increased right leg and hip pain. The record indicates that at this time plaintiff was still attempting to participate in the running of the family-owned restaurant, and he reported to Dr. Dickerson that his increased pain was making it difficult to perform his job duties. An MRI scan was performed, and plaintiff returned to Dr. Dickerson on 20 June 1997. The scan results confirmed a herniated disc at L5-S1 on the right side, which was putting pressure on the L5 nerve root. A nerve block was done at that time, which helped plaintiff's pain symptoms for a few hours. A second nerve block was done on 3 July 1997, that produced concordant pain this time. Because the blocks were not providing him with lasting relief, plaintiff decided to undergo surgery. A laminectomy was performed by Dr. Dickerson on 21 July 1997. The Full Commission finds that 21 July 1997 is the first date in the record of this claim that the evidence supports plaintiff's inability to earn wages. Dr. Dickerson found a facet joint cyst in addition to the herniated disc which, in his opinion, was also contributing to the irritation of the nerve.
8. Following surgery, plaintiff reported relief of his leg pain. He still had numbness and back pain, but he felt that both were improving. He completed a course of physical therapy and began home therapy. Dr. Dickerson had written plaintiff out of work following the surgery, but plaintiff had started trying to go back to work on his own volition by August. On 22 August 1997, plaintiff reported to Dr. Dickerson that he was having some difficulty attempting to return to work. The Full Commission finds that any attempts by plaintiff to return to work following his 21 July 1997 surgery constitute failed trial returns to work.
9. By 26 September 1997, plaintiff's leg pain was completely resolved; however, he was experiencing a considerable amount of back pain if he stood too long. Dr. Dickerson began administering cortisone shots to plaintiff in his back to relieve pain. In December 1997, plaintiff had another MRI which showed the development of scar tissue around the surgical site with a possible recurring disc herniation. Dr. Dickerson also felt that plaintiff had another cyst at L4-L5, but he did not want to perform additional surgery, He therefore rated and released plaintiff with a 15% disability to the back. Dr. Dickerson provided restrictions of limited bending, no lifting over ten pounds, and that plaintiff should alternate between sitting and standing. He continued to see plaintiff and to prescribe medications along with periodic cortisone shots to plaintiff's back.
10. In addition to his treatment by Dr. Dickerson, plaintiff began treatment through his health maintenance organization for depression and panic attacks. He first began treatment with psychiatrist Dr. Gloria Manly at Kaiser Permanente and then when she left her practice, plaintiff's care was transferred to Kaiser psychiatrist Dr. Fred Caudill. Dr. Caudill treated plaintiff with various combinations of medications including Prozac, Valium, Elavil and Wellbutrin to get his depression and panic attacks under control. Dr. Caudill continues to treat plaintiff for depression and panic disorder without agoraphobia, which fluctuates between moderate to severe in accordance with the level of plaintiff's pain symptoms. Dr. Caudill is of the opinion that "it is reasonable to conclude that the onset of [plaintiff's] depressive symptoms is at least in part, if not wholly, related to the back injury and subsequent pain and disability." Dr. Caudill also opined that people with chronic pain are at a greater risk than the general public of developing depression.
11. Dr. Dickerson was of the opinion that whenever a patient experiences low back pain that persists beyond a few weeks, "depression becomes an element and sometimes a very significant element in their illness." Dr. Dickerson further opined and the Full Commission finds that plaintiff's depression is directly related to the chronic pain plaintiff suffers as a result of his back injury.
12. In April 1996, approximately three months after his slip and fall accident, plaintiff left defendant's employ and accepted a job with Montgomery Tank Lines. The job was the same job plaintiff had held with defendant, and was located at the same plant in which plaintiff had been employed by defendant. However, plaintiff earned less money than he had been making when employed by defendant. Plaintiff did not miss any work while employed with Montgomery Tank Lines, although he testified that his condition worsened during that period. After approximately three months, plaintiff quit the job with Montgomery Tank Lines to help run a family owned restaurant with his wife. Initially, he planned to be the manager, but after only three weeks, plaintiff realized that he could not sustain the work full-time. He began working sporadically and eventually could not go into the restaurant at all as his pain worsened.
13. Plaintiff became totally disabled as of the date of his surgery on 21 July 1997, as a result of back injuries sustained in his fall of 9 January 1996, and his depression which flowed directly from and is causally related to pain associated with his back injuries. Any wages plaintiff may have earned after 21 July 1997 were not indicative of plaintiff's wage-earning capacity.
14. Plaintiff continues to be in pain and is in need of additional medical treatment.
15. Dr. Caudill has indicated plaintiff should seek psychotherapy counseling.
16. Defendant has been unable to provide the Commission with a Form 22 Wage Chart from which to ascertain plaintiff's average weekly wage at the time of his injury. Defendant has provided a copy of some of plaintiff's payroll information, by which the Commission may find that in the year 1995 plaintiff earned $37,758.83. Dividing plaintiff's 1995 earnings by 52 weeks gives plaintiff an average weekly wage of $726.13, which yields a weekly compensation rate of $484.11. The Full Commission finds that this method of calculating plaintiff's average weekly wage most nearly approximates the amount which plaintiff would be earning were it not for the injury, and provides results that are fair and just to both plaintiff and defendant.
17. As a result of his injury, plaintiff is entitled to temporary total disability compensation beginning on 21 July 1997. As plaintiff has not reached maximum medical improvement from all of the compensable consequences of his injury, he is entitled to continuing compensation until further Order of the Commission.
18. There is no evidence in the record that plaintiff's change in employers in April 1996, which result in diminished wages was due in any part to his compensable injury.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an injury by accident arising out of his employment with defendant on 9 January 1996 when he slipped and fell on ice located on defendant's property. Therefore, plaintiff is eligible for compensation under the Act for disability resulting from his injury. N.C. Gen. Stat. § 97-2.
2. In order to receive workers' compensation benefits, a plaintiff must first prove the existence of a disability as well as the extent of that disability. Hendrix v. Linn-Corriher-Corp., 317 N.C. 179, 185,345 S.E.2d 374, 378 (1986); Franklin v. Broyhill Furniture Industries,123 N.C. App. 200, 472 S.E.2d 382 (1996). As a direct result of his 9 January 1996 injury by accident, plaintiff suffered a herniated disc and continuing debilitating pain which has resulted in severe depression, rendering plaintiff unable to earn wages.
3. Plaintiff is eligible for indemnity benefits in the weekly amount of $484.11 beginning on 21 July 1997, the date of plaintiff's back surgery and at which time the Full Commission has determined plaintiff could no longer work and earn wages. Plaintiff has not reached maximum medical improvement from his disabling condition of depression which is directly causally related to his compensable injury; therefore, he is eligible for continuing weekly indemnity compensation until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Calculating plaintiff's average weekly wage at the time of his injury by dividing his total earnings in 1995 by 52 weeks, most nearly approximates the amount which plaintiff would be earning were it not for the injury, and provides results that are fair and just to both plaintiff and defendant. N.C. Gen. Stat. § 97-2(5); Barnhardt v. Yellow CabCo., 266 N.C. 419, 146 S.E.2d 479 (1966).
5. Plaintiff is eligible for medical treatment for the injuries sustained in the 9 January 1996 injury by accident, including the 21 July 1997 surgery performed by Dr. Dickerson and resulting follow-up treatment, as well as the psychiatric treatment for plaintiff's depression provided by Dr. Manley and continued to the present by Dr. Caudill. N.C. Gen. Stat. § 97-25.
6. Plaintiff is not eligible for temporary partial disability benefits based upon diminished wages earned after leaving defendant's employ in April 1996, as plaintiff's change in jobs was not the result of his compensable injuries. N.C. Gen. Stat. § 97-30.
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation to plaintiff at the weekly compensation rate of $484.11, beginning on 21 July 1997, and continuing until further Order of the Commission. Defendant is entitled to a credit for any wages plaintiff earned since the date of injury. Counsel shall confer and work out this detail.
2. Dr. Dickerson is authorized as plaintiff's treating physician. Plaintiff shall follow the medical recommendations of said doctor.
3. Defendants shall provide vocational assistance in returning plaintiff to gainful employment once approved by Dr. Dickerson.
4. An attorney's fee of 25% of the compensation due plaintiff is hereby approved for plaintiff's counsel. Twenty five percent of the compensation that has accrued shall be sent directly to plaintiff's counsel. Thereafter, every fourth payment due to plaintiff in the future shall be sent to plaintiff's counsel.
5. Defendants shall pay the costs due the Commission.
This the ___ day of May, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN